552

(No. 92-CV-0178– 

*In re* APPLICATION OF DEBRA SPAIN

*Order filed November 1, 1991.*

*Order filed May 17, 1993.*

DEBRA A. SPAIN, *pro se*, for Claimant.

ROLAND W. BURRIS, Attorney General (JAMES MAHER III and LAWRENCE C. RIPPE, Assistant Attorneys General, of counsel), for Respondent.

ORDER

SOMMER, J.

This claim arises out of an incident that occurred on June 22, 1991. Debra A. Spain, mother of the deceased victim, Jeffery S. Garbo, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. Ill. Rev. Stat. 1989, ch. 70, par. 71 *et seq.*

This Court has carefully considered the application for benefits submitted on July 29, 1991, on the form prescribed by the Attorney General, and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the

Court, the Court finds:

1. That on June 22, 1991, the victim was beaten during an altercation with the two alleged offenders. The incident occurred near 800 West 5th Street, Johnston City, Illinois. Police investigation revealed that following a verbal dispute with one of the alleged offenders, the victim struck him. The alleged offenders then proceeded to beat the victim. The victim was hospitalized on July 5, 1991, and expired from his injuries sustained during the beating on July 7, 1991. The Claimant then reported this incident to the police and the alleged offenders were subsequently charged with involuntary manslaughter. The criminal proceedings against them are currently pending.

2. That section 80.1 of the Act indicates factors used to determine entitlement to compensation. Specifically, section 80.1(d) of the Act states that an award shall be reduced or denied according to the extent to which the victim's acts or conduct provoked or contributed to his injury or death, or to the extent to which any prior criminal conviction or conduct of the victim may have directly or indirectly contributed to the injury or death of the victim.

3. That it appears from the investigatory report and the police report that the victim was the aggressor in this incident.

4. That the victim's conduct contributed to his death to such an extent as to warrant that the Claimant be denied entitlement to compensation.

5. That in order for a claimant to be eligible for compensation under the Act, there must be evidence that one of the violent crimes specifically set forth under section 72(c) of the Act occurred.

6. That involuntary manslaughter is not one of the

violent crimes specifically set forth under section 72(c) of the Act.

7. That according to section 76.1(b) of the Act, a person is entitled to compensation under this Act if the appropriate law enforcement officials were notified of the perpetration of the crime allegedly causing the death or injury to the victim within 72 hours, or in the event such notification was made more than 72 hours after the perpetration of the crime, the applicant establishes that such notice was timely under the circumstances.

8. That the law enforcement officials were notified 14 days after the perpetration of the crime and the Claimant has failed to establish that such notification was timely under the circumstances.

9. That this claim does not meet required conditions precedent for compensation under the Act.

It is hereby ordered that this claim be, and is, hereby denied.

## OPINION

SOMMER, C.J.

The Claimant, Debra A. Spain, the natural mother of Jeffery Scott Garbo, deceased, seeks benefits under the applicable provisions of the Crime Victims Compensation Act for the death of her son on July 7, 1991.

On June 22, 1991, Jeffery Scott Garbo was beaten by two assailants after he started a fight with one of the assailants who had been talking to his girlfriend. The incident occurred at a party in the public housing development in Johnston City, Illinois. The victim was hospitalized on July 5, 1991, and expired from a subdural hematoma on July 7, 1991.

Criminal proceedings were commenced against the offenders in the Williamson County Circuit Court, resulting in their pleas of guilty to charges of involuntary manslaughter in connection with the death of Jeffery Scott Garbo.

Tanya Richardson, who was the decedent's girlfriend, testified that she had arranged to meet the decedent at a party in Johnston City. Tanya arrived at approximately 10:00 p.m. The decedent was already at the party and had been drinking, but was not drunk. Tanya had a "little argument" with the decedent, and the decedent went for a walk. The decedent was a little bit angry when he left, and Tanya had begun to leave the party so that she could call her sister to go home. As she exited, she began talking to one of the revelers who had been drinking and was walking in an unsteady way. The decedent then walked up and hit the man to whom Tanya had been talking. The decedent had not argued with the man, and the man had not acted in a threatening manner toward the decedent. The brother of the man whom the decedent had struck came out and started a fight with the decedent. The fight lasted for 15 or 20 minutes. The decedent lost consciousness, but no one called an ambulance. The decedent was not taken to the hospital, and no one suggested that he ought to go. The decedent regained consciousness and he and Tanya went for a walk and returned to the party.

Tanya called the decedent's mother to come and get him before his assailants started something with him again. Tanya tricked the decedent into going for a walk with her to the Dairy Queen where she had made previous arrangements for the decedent's mother to pick him up.

After the decedent's mother picked him up at the Dairy Queen, Tanya went back to the party, and after 25 or 30 minutes called her sister and went home.

The decedent's mother testified that she picked her son up at the Dairy Queen. When she picked him up he had been drinking and was angry. His eyes were red and he "cussed" a lot, which he sometimes did when he was intoxicated. The Claimant noticed a slight black mark under the decedent's right eye, and a scratch at the outside corner of his right eye, but noticed no other injuries.

The Claimant testified that two days later, the decedent started complaining about headaches. The Claimant took him to the Franklin County Hospital in Benton, where he waited three hours in the emergency room to be seen, but lost patience and left the hospital. On July 4, the decedent did not go to a family picnic and slept. On July 5 when he got up he couldn't walk straight and walked into a wall. As far as his mother knows, he had not been drinking between June 24 and July 5, but for a day and a half or two days, her son had visited a friend of the Claimant's in Johnston City and had stayed away from home.

On July 5, after the decedent walked into a wall, he grabbed his shoes and a pillow and began to take a step and fell face first. The Claimant called an ambulance and the decedent was taken to the hospital. While conversing with her son shortly before he fell, the Claimant testified that her son mentioned "something about a black beauty," which is a drug or capsule. The Claimant testified that she couldn't understand what her son said, and that he appeared that he didn't know where he was and seemed to be intoxicated or under the influence of drugs.

Her son was taken by helicopter to St. Mary's Hospi-

tal in Evansville and was operated on July 6, 1991. He died July 7, 1991. The doctors said that the decedent had died as a result of hard blows to the head.

The Claimant testified that neither her son nor Tanya called the police prior to July 6. The Claimant did not call the police because she did not know that her son was hurt. The Claimant testified if she had known that her son was hurt "that bad" she would have called the police.

On November 1, 1991, the present claim was denied by order of this Court. The Claimant appealed this denial and the claim was heard before the commissioner on May 7, 1992.

The claim was originally denied on three grounds:

First, that the crime was not reported to the police within 72 hours, or that whatever notification was made after 72 hours was "timely under the circumstances." Ill. Rev. Stat., ch. 70, par. 76.1(6).

Second, that the decedent "provoked or contributed to his injury or death." (Ill. Rev. Stat., ch. 70, par. 80.1.) Any award may be reduced or denied according to the extent to which the decedent "provoked or contributed to his injury or death."

Third, that the offenders were charged with involuntary manslaughter, a crime that does not give rise to compensation under the Act. Ill. Rev. Stat., ch. 70, par. 72(c).

The testimony shows that the decedent provoked the beating he received. The question is whether compensation should be entirely denied or be reduced. We find that compensation should be entirely denied. A person generally may not start an altercation when drinking and then when injured in the altercation demand that the tax-

payers pay for the injury. In this claim, the response of the perpetrators, that is, to fight, would not be unexpected by the decedent. Though the end result was tragic, the decedent did commit a crime and provoked a situation in which injuries were possible.

We need not consider the other grounds for denial, as the decedent's conduct provoked his injury and death.

It is therefore ordered that this Court's order of November 1, 1991, is affirmed and this claim is denied.